**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| BOBBIE J. WOODS,<br><br>               Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>               Defendant. | Case No. 2:18-cv-00154-RFB-VCF<br><br>**REPORT & RECOMMENDATION**<br><br>MOTION FOR REMAND [ECF NO. 10], CROSS-MOTION TO AFFIRM [ECF NO. 11] |

This matter involves Plaintiff Bobbie Woods' appeal from the Commissioner's final decision denying Woods social security benefits. Before the Court are Woods' Motion for Remand (ECF No. 10) and the Commissioner's Cross-Motion to Affirm (ECF No. 11). For the reasons stated below, the Court recommends denying Woods' motion and granting the Commissioner's motion.

## STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Where, as here, the Commissioner of Social Security renders a final decision denying a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[I]t is usually better to minimize the opportunity for reviewing courts to substitute their discretion for

that of the agency." (quoting *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014))). The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). This means such relevant "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938); *Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 523 (9th Cir. 2014).

If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation. (*See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

## DISCUSSION

In this case, the Administrative Law Judge ("ALJ") followed the five-step sequential evaluation process in 20 C.F.R. § 404.1520. The ALJ concluded that Woods did not engage in substantial gainful activity during the relevant timeframe. (ECF No. 9-1 at 26). The ALJ found Woods suffered from medically determinable severe impairments consisting of major depressive disorder/bipolar affective disorder and anxiety disorder/generalized anxiety disorder. (*Id.*). The ALJ found that Woods' cardiomyopathy/congestive heart failure or paroxysmal atrial fibrillation was not medically determinable before the date last insured. (*Id*. at 27-28). The ALJ determined that Woods' impairments did not meet or equal any of the "listed" impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 29). The ALJ concluded Woods retained the residual functional capacity ("RFC") to

> perform the full range of work at all exertional levels but with the following nonexertional limitations: she was limited to understanding, remembering and carrying out simple instructions to perform work which needed little or no judgment to so a range of work from simply duties that could be learned on the job in a short period of 30 days of less, up to and including, some detailed, but not complex work tasks.

(*Id.* at 31). The ALJ determined, without the use of a vocational expert, that Woods was unable to perform past relevant work, but would be able to perform other jobs that exist in significant numbers in the national economy. (*Id.* at 33-34). The ALJ found that Woods was not under a disability as defined in the Social Security Act. (*Id.* at 35).

Woods challenges the ALJ's assessment on three bases. Woods argues the ALJ (1) erred in finding that Woods' heart conditions were not medically determinable prior to the date last insured, (2) improperly evaluated Dr. Winkleman's opinion regarding Woods' mental limitations, and (3) incorrectly weighed Woods' credibility. (ECF No. 10 at 10-18). The Commissioner argues the ALJ properly evaluated all the medical evidence and testimony presented in concluding that Woods was not disabled. (ECF No. 11 at 3-12).

I.  **Woods' Heart Conditions**

Woods' date last insured was December 31, 2014. (ECF No. 9-1 at 26). Prior to that date, Woods had complained of shortness of breath and chest pains to doctors on several occasions. (*Id.* at 27-28). In January and February of 2015, Plaintiff was diagnosed with significant cardiovascular problems. (*Id.*). Woods argues that the medical findings made before and only a month or two after her date last insured indicate that her heart condition was severe prior to the date last insured. (ECF No. 10 at 10-13).

Under SSR 83-20,[1] "[t]he starting point in determining the date of onset of disability is the individual's statement as to when disability began." "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.* "In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991).

The Court finds that the ALJ did not err by concluding that Woods' heart conditions were not medically determinable before the date last insured. Though Woods alleges that her disability began in 2009, this is based on a combination of impairments including depression and anxiety, strokes, seizures, and short term memory loss. (ECF No. 9-1 at 174). There is little, if any, medical evidence demonstrating that Woods was limited based on her heart condition prior to her date last insured. The ALJ summarized the "unremarkable" medical findings regarding Woods' heart conditions prior to December 31, 2014. (*Id.* at 27-28). The ALJ noted that even in January and February 2015, Woods reported no chest pain or shortness of breath except on direct inquiry, and attributed these symptoms to anxiety. (*Id.*). The ALJ also afforded the opinion of Dr. Lee significant weight in his analysis. (*Id.* at 29). Dr. Lee concluded that Woods had no severe medically determinable physical impairment prior to her date last insured, specifically noting that a cardio workup from 2014 was negative and the symptoms could be related to anxiety. (*Id.* at 67-68). The ALJ's determination is consistent with the medical evidence of record and did not need further input from a medical adviser.

---

[1] SSR 83-20 was rescinded and replaced on October 2, 2018, after the ALJ reached a determination in this case.

**II.     Dr. Winkleman's Opinion**

Dr. Winkleman opined that Woods "could understand, remember, and carry out simple and a few detailed tasks without special supervision," but would be unable to consistently do so for "complex or most detailed tasks." (ECF No. 9-1 at 534-535). Dr. Winkleman also found that Woods "would seem to have mild difficulty interacting with supervisors, and peers, and the public." (*Id.* at 535). The ALJ gave Dr. Winkleman's opinion "significant weight to the extent it is…supported by and consistent with the objective medical evidence, mental status examinations, course of routine and conservative treatment, and the record as a whole." (*Id.* at 33). The ALJ found that Woods was limited to "understanding, remembering, and carrying out simple instructions to perform work which needed little or no judgment to do: simple duties that could be learned on the job in a short period of 30 days or less, up to and including detailed but not complex work tasks." (*Id.* at 33). The ALJ concluded that Woods was able to perform other jobs that exist in significant numbers in the national economy without the input of a vocational expert based on the medical-vocational guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.* at 34). The ALJ noted "[t]hese jobs ordinarily involve dealing primarily with objects, rather than with data or people." (*Id.*).

As an initial matter, the Court finds that the ALJ included the limitations assessed by Dr. Winkleman in his analysis. The ALJ addressed Woods' limitation to simple and a few detailed tasks and mild difficulty interacting with others. The ALJ did not, as Woods argues, "determine[] the RFC in advance and then expected the medical evidence to fit within it." (ECF No. 10 at 14). The ALJ accepted Dr. Winkleman's conclusions, as they were consistent with the medical evidence as a whole.

20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids") "consist of a matrix of [RFC, age, work experience, and education] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Hoopai v. Astrue*, 499 F.3d 1071,

5

1075 (9th Cir. 2007) (*quoting Heckler v. Campbell,* 461 U.S. 458, 461-62 (1983). The grids use the number of unskilled jobs in the economy to determine whether sufficient employment exists. 20 C.F.R. Part 404, Subpart P, Appendix 2 200.00(b). "If an ALJ finds a claimant's nonexertional limitations do not significantly affect his exertional capabilities, the ALJ may use [the grids] in lieu of calling a vocational expert." *Cowen v. Comm'r of Soc. Sec.*, 400 F. App'x 275, 277 (9th Cir. 2010) (internal quotation omitted).

Woods argues that her limitation to simple and some detailed tasks and mild difficulty interacting with supervisors, peers, and the public are severe nonexertional limitations on her ability to do unskilled work that would require a vocational expert rather than reliance solely on the grids. (ECF No. 10 at 14-16). However, Woods cites no cases in support of this assertion. The cases the Court has found have held that limitations to simple tasks and some restrictions on contact with others are not severe enough to require the use of a vocational expert. *See Angulo v. Colvin*, 577 F. App'x 686, 687 (9th Cir. 2014) (a "restriction to nonpupblic, simple, repetitive work" "did not significantly limit [the] ability to do unskilled light or sedentary work"); *Worsham v. Astrue*, No. 3:08-CV-00591-LRH-VPC, 2010 WL 437098, at *5 (D. Nev. Feb. 1, 2010) (a finding that the claimant "could perform simple tasks" was not "significant" or "sufficiently severe"); *Curiel v. Colvin*, No. 15-CV-05165-EMC, 2016 WL 4088870, at *4 (N.D. Cal. Aug. 2, 2016) (being "limited to simple, repetitive, tasks with only occasional public interaction" is not significant or sufficiently severe); *Hansen v. Astrue*, No. C07-1198 CRD, 2008 WL 2705594, at *6 (W.D. Wash. July 7, 2008) ("conclusion that Plaintiff can perform unskilled work because of his limitation to simple, repetitive tasks and difficulty reading, writing, and concentrating" was not in error).

Woods' limitations do not significantly or severely limit her ability to do the unskilled work contemplated by the grids. The grids note twice that "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people)." 20 C.F.R. Part 404, Subpart P,

Appendix 2, 201.00(i); 202.00(g).  The grids also emphasize that unskilled work "can be performed after a short demonstration or within 30 days, and do not require special skills or experience."  *Id.* at 202.00.  Therefore, the ALJ did not err by relying on the grids rather than calling a vocational expert.

### III.     Woods' Credibility

The ALJ found that Woods' "statements concerning the intensity, persistence and limiting effects of [her] symptoms were not consistent with the medical evidence and other evidence in the record."  (ECF No. 9-1 at 32).  In finding Woods to not be credible, the ALJ noted that Woods' treatment for her mental impairments was routine and conservative and she previously reported having a "wonderful time" on vacation in the Dominican Republic.  (*Id.* at 32).  Woods argues that the "ALJ failed properly to consider whether Plaintiff's poverty contributed to her inability to seek more extensive treatment for her impairments" and Woods' one-time vacation does not reflect on her ability to sustain activity for a full word day or week.  (ECF No. 10 at 17-18).  Woods also asserts that "the ALJ did not provide specific reasons to discount the specific aspects of Plaintiff's testimony which establish disability."  (*Id.* at 18).

If the ALJ decides to discount the claimant's testimony regarding his or her subjective symptoms, the ALJ must engage in a two-step analysis before finding the claimant's testimony lacks credibility.  SSR 16–3p; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and

convincing reasons for doing so." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). To reject the claimant's testimony, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than he claims. *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints, because general findings are not sufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [a court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The Court finds that the ALJ provided clear and convincing reasons for finding Woods' testimony not fully credible. The ALJ noted that Woods' treatment for her mental impairments was conservative in conjunction with stating that her "[m]ental status examinations were largely unremarkable." (ECF No. 9-1 at 32). While a vacation does not strongly indicate what a person is capable of in terms of work, it is significant to Woods' credibility that she previously reported having a "wonderful time" on vacation, then told the ALJ that she had a "hard time." (*Id.*). Throughout the ALJ's decision, he cites medical evidence that is inconsistent with Woods' own evaluation of her abilities. (*Id* at 21-33). For example, "in February 2015, [Woods] reported no chest pain or shortness of breath with any ordinary levels of activity," and "she was essentially asymptomatic except for occasional palpitations." (*Id.* at 28). In addition, during Woods' consultative medical examination, she reported that she had experienced migraines since adolescence and "she has worked with them for years," despite claiming at a hearing before the ALJ that the migraines prevented her from working. (*Id.* at 28, 31). Finally, two DDS medical consultants found that Woods "had no severe medically determinable physical impairment, prior to her date last insured." (*Id.* at 29).

The ALJ's decision is supported by substantial evidence and is not based on any legal error. Therefore, the decision should be upheld.

ACCORDINGLY,

IT IS RECOMMENDED that Woods' Motion for Remand (ECF No. 10) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross-Motion to Affirm (ECF No. 11) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 1st day of November, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE