# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BOBBIE JO WOODS, | Case No. 2:18-cv-00154-RFB-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court are Plaintiff Bobbie Jo Wood's ("Woods") Motion to Remand to Social Security Administration, ECF No. 10 and Defendant Nancy A. Berryhill's (the "Commissioner") Countermotion to Affirm the Agency Decision, ECF No. 11. Magistrate Judge Cam Ferenbach issued a Report and Recommendation ("R&R") that Defendant's Countermotion be granted and Plaintiff's Motion to Remand be denied. ECF No. 14.

For the reasons discussed below, the Court finds that the ALJ's opinion contains legal error that is not harmless. Therefore, the Court rejects the recommendations of the R&R, grants Plaintiff's motion and remands to Defendant for further proceedings.

///

///

///

## II. BACKGROUND

Neither party objected to the Magistrate Ferenbach's summary of the background facts, and so the Court incorporates and adopts, without restating, that "background" section here. ECF No. 14 The Court adds the following procedural history.

Plaintiff Bobbie Jo Woods filed her complaint on January 28, 2018, seeking review of a decision to deny her application for disability insurance benefits. ECF No. 1. On May 2, 2018 Plaintiff filed a Motion to Remand, arguing that the Administrative Law Judge ("ALJ") improperly found that Plaintiff's heart conditions were not medically determinable prior to the date last insured, improperly addressed Plaintiff's medical evidence, insufficiently credited Plaintiff's testimony, and improperly conducted its step five analysis by not hearing from a vocational expert.

## III. LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party may file specific written objections to the findings and recommendations of a magistrate judge. Id. § 636(b)(1); Local Rule IB 3-2(a). When written objections have been filed, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations and authorizes district courts to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In undertaking that review, an ALJ's "disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "Substantial evidence means more

than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)) (quotation marks omitted).

"If the evidence can reasonably support either affirming or reversing a decision, [a reviewing court] may not substitute [its] judgment for that of the Commissioner." Lingenfelter, 504 F.3d at 1035. Nevertheless, the Court may not simply affirm by selecting a subset of the evidence supporting the ALJ's conclusion, nor can the Court affirm on a ground on which the ALJ did not rely. Garrison, 759 F.3d at 1009–10. Rather, the Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion," to determine whether that conclusion is supported by substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Id. When reviewing the assignment of weight and resolution conflicts in medical testimony, the 9th Circuit distinguishes the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; (3) neither treating nor examining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[1] The treating physician's opinion is generally entitled to more weight. Id. If a treating physician's opinion or ultimate conclusion is not contradicted by another physician, "it may be rejected only for 'clear and convincing' reasons." Id. However, when the treating physician's opinion is contradicted by another physician, the Commissioner may reject it by "providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. A treating physician's opinion

---

[1] This reflects the Ninth Circuit's adoption of SSR ("Social Security Ruling") 16-3p, which the Social Security Administration rescinded as of March 27, 2017. However because the ALJ's decision in this case came down on February 23, 2017, the new regime will not apply unless the matter is remanded for further proceedings.

is still owed deference if contradicted and is often "entitled to the greatest weight . . . even when it does not meet the test for controlling weight." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). Because a treating physician has the greatest opportunity to observe and know the claimant as an individual, the ALJ should rely on the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). However, the ALJ may reject conclusory opinions in the form of a checklist containing no explanations for the conclusions. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

When a treating physician's opinion is not assigned controlling weight, the ALJ considers specific factors in determining the appropriate weight to assign the opinion. Orn, 495 F.3d at 631. The factors include the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the amount and quality of evidence supporting the medical opinion; the medical opinion's consistency with the record as a whole; the specialty of the physician providing the opinion; and, other factors which support or contradict the opinion. Id.; 10 C.F.R § 404.1527(c). The ALJ must provide a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and [make] findings" rather than state mere conclusions for dismissing the opinion of a treating physician. Reddick, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ errs when he fails to explicitly reject a medical opinion, fails to provide specific and legitimate reasons for crediting one medical opinion over another, ignores or rejects an opinion by offering boilerplate language, or assigns too little weight to an opinion without explanation for why another opinion is more persuasive. Garrison, 759 F.3d at 1012–13.

The Social Security Act has established a five-step sequential evaluation procedure for determining Social Security disability claims. See 20 C.F.R. § 404.1520(a)(4); Garrison, 759 F.3d at 1010. "The burden of proof is on the claimant at steps one through four, but shifts to the

Commissioner at step five." Garrison, 759 F.3d at 1011. Here, the ALJ resolved Plaintiff's claim at step five.

**IV. DISCUSSION**

The Court considers each of Plaintiff's objections to the R&R in turn.

### a. Medical Determinability of Plaintiff's Heart Conditions Prior to Date Last Insured

In her motion to remand and her objection to the R&R, Plaintiff argues that the ALJ erred in determining that Plaintiff's heart condition was not medically determinable prior to Plaintiff's last date insured, and should have a requested a medical advisor to help determine the onset date for her heart conditions. The Court does finds that the ALJ erred, but that the error was harmless.

In circumstances where the ALJ must determine the date of disability onset and medical evidence from the time period at issue is insufficient or not available, Social Security Ruling ("SSR") 83-20 says that the ALJ should request a medical advisor. SSR 83-20. Although SSRs are not legally binding, they hold significant persuasive weight as they reflect the official interpretation of the Social Security Administration. Diedrich v. Berryhill, 874 F.3d 634, 638 (9th Cir. 2017). The ALJ need not call a medical advisor if there was never a determination that the claimant was disabled during the relevant time period. Id. at 639. Further, it is proper to consider medical records and reports that post-date the claimant's insured status if such records are relevant to the claimant's pre-expiration condition. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).

Plaintiff was diagnosed with various heart conditions, including cardiomyopathy/congestive heart failure, and paroxysmal atrial fibrillation in 2015. AR 622, 624. She currently wears a heart monitor. AR 42. Her date last insured was December 31, 2014. Despite

the relative proximity between the diagnosis and the date last insured, the ALJ concludes that there was insufficient evidence of Plaintiff's heart condition prior to December 31, 2014. AR 22. The ALJ found that "documented complaints of chest pain or shortness of breath were limited at best." Id. The ALJ notes that at a follow-up to visit at the Nevada Heart & Vascular Center in 2012, Plaintiff "denied any chest pain, pressure or shortness of breath." AR 23. The ALJ further notes that at follow-up appointments in 2015, after having been diagnosed, that Plaintiff admitted to "having episodes of chest pain and shortness of breath, but only related to anxiety-related issues, not on physical exertion." Id. The ALJ further notes that while Plaintiff did recently have a heart monitor implanted, "any reports of significant cardiovascular problems or diagnosis of cardiomyopathy/congestive heart failure, or paroxysmal atrial fibrillation did not occur until *after* her date last insured." Id.

But the record shows that there was objective medical evidence, as opposed to just Plaintiff's self-reported symptoms, of Plaintiff's heart conditions prior to the date last insured. During a 2011 exam at Sunrise Hospital and Center, the examining physician noted an ejection fraction of 45 to 50% and a small pericardial effusion[2]—excess fluid in the heart— a symptom of which is shortness of breath. AR 296. An April 2009 exam—before Plaintiff's alleged onset date of July 20, 2009—noted a history of shortness of breath and atelectasis[3]—a condition also characterized by breathing difficulty. AR 316. Plaintiff was also hospitalized in January 2014, in part to treat chest pain and shortness of breath. AR 370. During the hospitalization, a physician

---

[2] Pericardial Effusion, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/pericardial-effusion/symptoms-causes/syc-20353720 (last updated Aug. 10, 2017). The Court takes judicial notice of the commonly understood meanings of the medical terms referenced in Plaintiff's documents. Fed. R. Evid. 201 (courts may take judicial notice of facts that are not subject to reasonable dispute because they are generally known or are capable of accurate and ready determination); See Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) (taking judicial notice of a medical journal's definition of chronic fatigue syndrome in its remand to ALJ for award of benefits).

[3] Atelectasis Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/atelectasis/symptoms-causes/syc-20369684 (last updated Sept. 5, 2018).

performed a cardiac exam, during which the physician found a "small fixed defect in the septum near the base of the heart." AR 370. The record also noted a low ejection fraction of 32%. Id. Plaintiff also had an abnormal ECG scan. AR 381. But although the ALJ discussed this 2014 hospitalization, he discusses it solely in the context of whether or not there was objective evidence that Plaintiff had a stroke or a heart attack. AR 22.

The Commissioner argues that even if the ALJ erred in determining that the heart conditions were not medically determinable prior to the date last insured, that such error was harmless because the conditions did not cause significant work-related functional limitations. Plaintiff argues otherwise. Both the ALJ and Plaintiff heavily rely on Dr. Chanderraj's February 2015 letter to Plaintiff's primary care physician Dr. Angela Miller to support their findings as to the severity of Plaintiff's heart conditions. AR 620. The report states that Plaintiff is "in Class II of the New York Heart Association" Functional Classification. AR 620. Class II of the New York Heart Functional Classification means that a person has "[s]light limitation of physical activity. Comfortable at rest, but ordinary physical activity results in fatigue, palpitation ,or dyspnea."[4] The letter also states that "[Plaintiff] has no chest pains or shortness of breath with any ordinary levels of activity," and that she "appears to be essentially asymptomatic except for occasional palpitations." Id. The letter concludes by noting that "[Plaintiff] was recommended not to indulge in strenuous activity." Id. Plaintiff argues that the ALJ's failure to consider the progression of Plaintiff's symptoms led the ALJ to not properly consider the whole of Dr. Chanderraj's letter, which Plaintiff argues, would establish that Plaintiff was only suitable for sedentary work, which combined with her age at the time of the date last insured, and education,

---

[4] "Classes of Heart Failure." Heart.org, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (last reviewed May 31, 2017).

would have rendered her disabled pursuant to 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 201.14.

The Court finds that one could draw reasonable differing conclusions as to the severity of Plaintiff's heart conditions based on the Chanderraj letter and other evidence in the record. Because this is an instance where the evidence could reasonably support different conclusions, the Court will leave the ALJ's determination as to Plaintiff's heart conditions unperturbed. Lingenfelter, 504 F.3d at 1035. The Court also notes that because the ALJ never found that Plaintiff was disabled at any point, the SSR 83-20 medical advisor provision would not apply. Sam v. Astrue, 550 F.3d 808, 809 (9th Cir. 2008) (per curiam) ("SSR 83-20 does not require a medical expert where the ALJ explicitly finds that the claimant has never been disabled.").

### b. ALJ's Weighing of Dr. Winkleman's Medical Opinion

Plaintiff next argues that the ALJ erred in not properly considering all of Dr. Winkelman's report. Specifically Plaintiff argues that Dr. Winkelman's report, which the ALJ stated he heavily weighed, supports a finding that Plaintiff was only capable of doing work requiring a general educational development level at Reasoning Level 1, pursuant to the categorizations in the Dictionary of Occupational Titles ("DOT"). The Court does not agree that Dr. Winkelman's report necessarily supports a finding that Plaintiff was only capable of doing work at Reasoning Level 1. Reasoning Level 1 is described as: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Pl.'s Mot., ECF No. 10, at 14. By contrast Level 2 states: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Id. Dr. Winkelman states in her report regarding

Plaintiff that Plaintiff could understand, remember and carry out simple and a few detailed tasks. AR 520. She would have mild problems interacting with supervisors and the public. Id. The Court agrees with the Commissioner that Dr. Winkelman's report could support a Reasoning Level of 1 or 2 and with the Magistrate Judge that the ALJ did not improperly disregard portions of Dr. Winkelman's report.

### c. Plaintiff's Testimony

Plaintiff next argues that the ALJ erroneously rejected her testimony. The ALJ found that Plaintiff's "impairments could reasonably have been expected to cause some of the alleged symptoms," but that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not consistent with the medical evidence or other evidence in the record." AR 27.

As the ALJ did not find evidence of malingering, the ALJ may only reject Plaintiff's testimony regarding the severity of her symptoms with specific, clear, and convincing reasons. Garrison, 759 F.3d at 1014–15. "The clear and convincing standard is the most demanding required in Social Security cases." Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ must identify with specificity "what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). As of March 2016, the Social Security Administration has eliminated the use of the term "credibility" from its policy, as "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. However, ALJs may continue to consider the consistency of a claimant's statements compared to other statements by the claimant and to the overall evidence of the record. Id.

The Court agrees with Plaintiff that the ALJ fails to give clear and convincing reasons as to why he discounts Plaintiff's testimony—specifically her testimony about her physical limitations. Plaintiff testified that she can lift only 20 pounds at one time, sit for half an hour to forty-five minutes, and stand for half an hour. AR 49 – 50. She also testified that she faints and gets dizzy easily and has to break up tasks because she is easily fatigued. Id. Yet the ALJ does not give clear and convincing reasons as to why he rejected that portion of Plaintiff's testimony when making his residual functional capacity analysis. Indeed, the ALJ does not appear to address that portion of Plaintiff's testimony at all when making that analysis. The ALJ only discusses Plaintiff's physical impairments at step two when determining that these impairments are not severe. AR 21 – 24. of Accordingly, the Court finds that the ALJ should reevaluate Plaintiff's residual functional capacity in light of her testimony as to her physical limitations.

### d. ALJ's Reliance on Grids Rather Than Vocational Expert and Step Five Analysis

"Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). At step five, the burden then shifts to the Commissioner to find that there are significant jobs in the national economy that the claimant can perform in light of their residual functional capacity, age, education and work experience. Id. 20 C.F.R. §404.1560(b)(3). There are two primary ways an ALJ can do this: 1) through testimony from a vocational expert, or 2) through use of the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 (sometimes referred to as the "Grids"). As the Ninth Circuit explains:

> The Guidelines present, in *table* form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the

grids." The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00. Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.

Tackett, 180 F.3d at 1101.

This approach is designed to support efficiency and the uniform adjudication of claims. Id. However, an ALJ may rely on the grids alone "only when the grids accurately and completely describe the claimants' abilities and limitations." Id. (internal citations omitted). The ALJ must find that the claimant can perform the full range of jobs in the given category. Id.

In his decision, the ALJ found that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels" but with some nonexertional limitations. The nonexertional limitations that the ALJ found Plaintiff were: "she was limited to understanding, remember and carrying out simple instructions to perform work which needed little or no judgment to do: simple duties that could be learned on the job in short period of 30 days or less, up to and including detailed but not complex work tasks." AR 28. After making his assessment of Plaintiff's residual functional capacity, the ALJ thus concluded that "the claimant's ability to perform work at all exertional levels was compromised by nonexertional limitations," but found that because the claimant had no exertional impairment, Plaintiff could work in "unskilled jobs at all levels of exertion," and that "these jobs ordinarily involve dealing primarily with objects, rather than with data or people and . . . generally provide substantial vocational opportunity for persons with solely

///

mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." AR 29.

The Court finds this conclusion to be insufficiently supported. First, there is sufficient evidence in the record demonstrating that Plaintiff's impairments were not solely mental. Even if Plaintiff's physical impairments were not severe on their own, they must still be considered in conjunction with her mental impairments, which the ALJ did find were severe. AR 28. The ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." Celaya v. Halter, 332 F.3d 1777, 1182 (9th Cir. 2003) (quoting SSR 96-8p). The ALJ does not discuss at all how any of Plaintiff's physical impairments may have affected her nonexertional limitations, or make a clear finding as to whether Plaintiff was limited to sedentary work. The Court also notes that the ALJ erred by finding that, at 54 years old on the date last insured, Plaintiff "was a younger individual age 18-49." AR 29. At 54, Plaintiff would actually be classified as an individual approaching advanced age, and, as Plaintiff states in its briefing, if found to be only capable of sedentary work, would be deemed disabled. 20 C.F.R. § 404.1563; 20 C.F.R. § 404, subpt. P, app'x 2, Rule 201.14. Given the lack of clarity of the ALJ's findings as to whether Plaintiff could perform light or sedentary work, the miscategorization of Plaintiff's age category at the date last insured, and the ALJ's unsubstantiated disregard of Plaintiff's testimony concerning her physical limitations as discussed in the previous section, the Court finds that the ALJ must redo his step five analysis. The Court also finds that the ALJ's reliance on the grids was improper to the extent that his determination of Plaintiff's nonexertional limitations did not properly consider her physical impairments.

### e. Remand for Further Proceedings

The Court finds that the record is underdeveloped and that further administrative

proceedings would serve a useful purpose. Because the ALJ improperly discounted Plaintiff's testimony as to her physical limitations, the Court has an incomplete administrative record upon which to determine Plaintiff's disability status. The Court therefore remands for further proceedings and not an award of benefits. On remand, the ALJ is instructed to redo his analysis of Plaintiff's residual functional capacity in light of Plaintiff's testimony as to her physical impairments, and to conduct a new analysis at step five accordingly and consult with a vocational expert.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation (ECF No. 14) is rejected.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Remand (ECF No. 10) is granted. The case is remanded for further proceedings.

**IT IS FURTHER ORDERED** that the Commissioner's Cross-Motion to Affirm (ECF No. 11) is denied.

**IT IS FURTHER ORDERED** that this matter is remanded to Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, for additional proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a final judgment in favor of Plaintiff, and against Defendant. The Clerk of Court is instructed to close the case.

**DATED**: September 27, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**